IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| VERNON DAVE WELCH, | ) | No. C 04-5158 WHA (PR) |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING** |
| | ) | **MOTIONS FOR SUMMARY** |
| vs. | ) | **JUDGMENT** |
| | ) | |
| COUNTY OF SONOMA; CALIFORNIA | ) | |
| FORENSIC MEDICAL GROUP, INC.; | ) | |
| SANTA ROSA MEMORIAL HOSPITAL; | ) | |
| JIM PICCININI, Sonoma County Sheriff; | ) | (Docket Nos. 124, 134, 135) |
| Lieutenant SANDY GAESLIN; Lieutenant | ) | |
| L. W. ERSKINE; Deputy JODY OLNEY; | ) | |
| Deputy RICK BOSTIC; JANE AND JOHN | ) | |
| DOES, Sonoma County Sheriff's Deputies; | ) | |
| JOHN AND JANE DOES, Chief Medical | ) | |
| Officer, Officers, and Nurses at Sonoma | ) | |
| County Main Adult Detention Facility; | ) | |
| ROGER A. KLEIN, M.D.; DREW | ) | |
| HITTENBERGER, M.D.; JOHN | ) | |
| HIBBARD, M.D.; JIM LUDERS, M.D.; | ) | |
| MIKE E. DAGEY, R.N.; JANE and JOHN | ) | |
| DOES, City of Santa Rosa Police Officers; | ) | |
| Lieutenant PAUL HENRY; Officer MARY | ) | |
| LOU HERNANDEZ; JOHN DOE, | ) | |
| Chairman of Sonoma County Board of | ) | |
| Supervisors; | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**INTRODUCTION**

Plaintiff, an inmate at California Men's Colony in San Luis Obispo, filed this pro se

civil rights complaint under 42 U.S.C. § 1983. Pursuant to the remand order from the Court

of Appeals, the second amended complaint was reviewed pursuant to 28 U.S.C. 1915A, and

ordered served upon defendants. Defendants John Hibbard, M.D., James Luders, M.D., and

1    Michael Dagey, R.N., filed a motion for summary judgment, which was granted on March 13,

2    2013.

3        Three additional summary judgment motions are now pending, one by defendant

4    County of Sonoma, one by defendants Lieutenant Sandy Geaslin and Deputy Jody Olney, and

5    one by defendant Roger A. Klein, M.D..  The moving defendants each included with their

6    motions the warning about summary judgment required by *Rand v. Rowland*, 154 F.3d 952,

7    953-954 (9th Cir. 1998) (en banc), a warning plaintiff had previously received with the Order

8    of Service on December 20, 2011, as well as with the motion for summary judgment filed by

9    defendants Hibbard, Luders, and Dagey.  In all, plaintiff received the warning at least five

10   times.  Despite those warnings as well as extensions of time to file his opposition, plaintiff

11   has not filed an opposition to any of the motions.  For the reasons discussed below, the three

12   pending motions for summary judgment are **GRANTED**, and summary judgment is also

13   **GRANTED** in favor of defendants California Forensic Medical Group, Inc., the Santa Rosa

14   Memorial Hospital, and Drew Hittenberger, M.D..  The claims against the other

15   defendants have been dismissed in prior orders.

16                                **STATEMENT**

17       In September 2001, City of Santa Rosa police officers shot plaintiff in the arm

18   while arresting him.  His arm was broken and he was taken to Santa Rosa Memorial

19   Hospital, where he was treated by defendant Dr. Klein, an orthopedist.  After five days at

20   the hospital he was released to the Sonoma County jail, where he remained on charges of

21   attempted murder of a police officer, assault of a police officer with a deadly weapon,

22   possession of a stolen car, and fleeing from police officers.  Plaintiff was prescribed, and

23   received, a cast and a sling for his arm upon his discharge from the hospital.  At the jail, he

24   received treatment for his gunshot wound from medical personnel employed by the

25   California Forensics Medical Group ("CFMG"), which contracted with the County of

26   Sonoma to provide medical care at the jail, as well as follow-up care from Dr. Klein.

27       On June 26, 2002, plaintiff attended his sentencing hearing at the Sonoma County

28                                     2

Superior Court.  After being sentenced he had an outburst that included profanities.  He alleges that defendant Olney and other deputies of the Sonoma County Sheriff's Department used force to restrain him, and again that night when transporting him from the cell to another detention area.  Plaintiff returned to the jail, and approximately one week later, in July 2002, he was transferred to state prison.

Plaintiff claims that defendant Dr. Klein provided inadequate medical care for plaintiff's gunshot wound during his initial stay at the Santa Rosa Memorial Hospital and in follow-up appointments.  He claims that defendants Olney and Sheriff deputies used excessive force and failed to allow him access to medical care at the courthouse on June 26, 2002.  He claims that the County of Sonoma is liable for that excessive use of force and for inadequate medical care he recieved at the jail and at the courthouse.

## ANALYSIS

A.    STANDARD OF REVIEW

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v.  Liberty Lobby, Inc.*, 477 U.S. 242,248 (1986). A dispute
as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact.  *Celotex Corp.v. Cattrett*, 477 U.S. 317, 323 (1986). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins.  *Ibid.*

B.     ANALYSIS

The County of Sonoma filed a motion for summary judgment on October 30, 2012, and Geaslin and Olney filed a joint motion for summary judgment on the same day.  The deadline for oppositions was November 30, 2012.  Dr. Klein filed a motion for summary judgment on November 20, 2012, making the opposition due on December 20, 2012.  On January 3, 2013, the deadline for oppositions to all three motions was extended to January 22, 2013.  As explained in that order:

> Plaintiff has had an excessive amount of time to prepare his case and oppose the [summary judgment] motions.  The conduct at issue occurred over ten years ago, he filed the case over eight years ago, the defendants were served more than one year ago, and it has been more than five months since the defendants initially filed their summary judgment motions. . . . Additionally, plaintiff has already received at least six extensions of time in this case, including an extension of several months to oppose the summary judgment motions while certain defendants renewed their motions to correct a technical deficiency.

Plaintiff did not file an opposition to the summary judgment motions.  When a motion for summary judgment is not opposed, a verified complaint may be considered as an opposing affidavit to the extent it sets forth facts within the plaintiff's personal knowledge and admissible into evidence.  *Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).  Plaintiff's second amended complaint, the operative complaint herein, is not verified, however.  Plaintiff filed a request for leave to file a third amended complaint, which was denied without prejudice, but in any case the proposed third amended complaint was also not verified.  Under these circumstances, plaintiff has presented no evidence that can be considered in opposition to the summary judgment motions.

A district court may not grant a motion for summary judgment solely because the opposing party has failed to file an opposition, however.  *Cristobal v. Siegel*, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994) (unopposed motion may be granted only after court determines that there are no material issues of fact).  An unopposed motion for summary judgment may be granted only if the movant's papers are themselves sufficient to support the motion and do not on their face reveal a genuine issue of material fact.  *See Carmen v. San Francisco*

4

1   *Unified School District*, 237 F.3d 1026, 1029 (9th Cir. 2001); *see also North American*

2   *Specialty Insurance Company v. Royal Surplus Lines Insurance Company*, 541 F.3d 552, 558

3   (5th Cir. 2008) (if no factual showing is made in opposition to a motion for summary

4   judgment, the district court is not required to search the record sua sponte for a triable issue of

5   fact).

6          1.    <u>Defendants Olney and Geaslin</u>

7          Plaintiff claims that defendant Deputy Sheriff Olney and other officials of Sonoma

8   County used excessive force and failed to provide medical aid for him at the Sonoma County

9   courthouse on June 26, 2002.  He claims that Geaslin inadequately supervised and trained

10  Olney and other officials responsible for these actions. .

11         The evidence submitted by defendants Olney and Geaslin in support of their summary

12  judgment motion shows that on June 26, 2002, they worked in the division of the Sheriff's

13  Department responsible for courtroom security (Geaslin Decl. ¶¶ 4-5; Olney Decl. ¶¶ 3-4).

14  Olney was a deputy responsible for transporting defendants from the courthouse holding cell

15  to the courtroom, monitoring the defendants in the courtroom, and then transporting them

16  back from the courtroom to the holding cell (*id.* ¶ 6).  Geaslin was a Sergeant who supervised

17  and trained deputies assigned to court security, including Olney (Geaslin Decl. ¶¶ 4-8; Olney

18  Decl. ¶¶ 3-4).  Neither Olney nor Geaslin ever worked at the jail or had contact with plaintiff

19  there, and Geaslin never had direct contact or communication with plaintiff whatsoever

20  (*ibid.*).

21         Plaintiff alleges that after his outburst at his sentencing hearing on June 26, 2002,

22  Olney and other deputies used force on him to transport him back to the courthouse holding

23  cell (2nd. Amend. Compl. 24-25).  Specifically, he alleges that he backed away from Olney

24  and the other Sheriff's deputies who approached him, Olney grabbed his injured arm, plaintiff

25  tried to jerk it away, and Olney pulled on the arm (*ibid.*)  As discussed above, however,

26  plaintiff presents no evidence that any of these events took place.  Olney has submitted a

27  declaration stating that she does recall this incident or using force on plaintiff (Olney Decl. ¶¶

28                                              5

8-11).  The transcripts of the sentencing hearing confirm that plaintiff used profanities at the judge after hearing the sentence, but not that Olney was present or that any force was used to move plaintiff to the holding cell (Hilario Ex. C at 14).  As a result, there is simply no evidence that Olney used any force, much less excessive force against plaintiff when removing him from the sentencing hearing.  Plaintiff also alleges that late that evening, his arm was when he was transported from the holding cell to another detention unit (2d. Amend. Compl. 28).  Plaintiff does not allege that Olney was one of the deputies involved in that incident, however, nor is there any evidence suggesting her involvement.  Consequently, there is no genuine factual dispute as to whether Olney used excessive force on plaintiff.

Plaintiff also alleges that he did not receive medical care following the alleged use of force against him on June 26, 2002 (*id.* 26-27, 30).  Plaintiff does not allege, and there is no evidence, that Olney failed to provide medical care.  Moreover, plaintiff's medical records show that shortly after the hearing, he received a medical examination in the holding cell, a doctor was consulted, and x-rays were taken (Hilario Decl. Ex. D at L53, L86).  Similarly, after he was transported later that evening away from the cell, he received a further medical examination and consultation with a doctor (*ibid.*).  Because there is no evidence that Olney was involved in any failure to provide plaintiff with medical care following the alleged use of force against him, she cannot be held liable for violating his constitutional rights on these grounds.

Geaslin's evidence shows that he never had any contact or communication with plaintiff, but as a Sergeant in the Sheriff Department's Law Enforcement Division he supervised and trained courtroom security deputies (Geaslin Decl. ¶¶ 4-8).  A supervisor may be liable under Section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.  *Henry A. v. Willden*, 678 F.3d 991, 1003-04 (9th Cir. 2012).  Here, Geaslin is only liable to the extent that his failure to properly train or supervise Olney or other deputies charged with courtroom security caused them to violate plaintiff's rights.

6

As there is no evidence that any deputy that Geaslin supervised and trained used force on plaintiff or denied him medical care, there is also genuine issue of material fact as to whether Geaslin is responsible for any violation of plaintiff's rights.

        2.     <u>County of Sonoma</u>

Plaintiff claims that the County of Sonoma is liable for Sheriff's deputies using excessive force against him at the courthouse on June 26, 2002, and for his failure to receive adequate medical care on that date and on other occasions at the jail.  The County is represented by the same counsel as Olney and Geaslin, and has submitted the same supporting evidence, as described above.

Counties are subject to liability under 42 U.S.C. 1983 where official policy or custom causes a constitutional tort.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). Plaintiff must show: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy is the moving force behind the constitutional violation.  *Plumeau v. School Dist. #40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).

The County contracts with CFMG to provide medical care to its inmates.  Plaintiff alleges three instances he did not receive adequate medical care.  For these alleged failures to amount to a violation of his constitutional rights, plaintiff would have to show that the jail and CFMG employees were deliberately indifferent to his serious medical needs.  *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  As noted, plaintiff has presented no evidence in support of his allegations, but defendants' evidence, including his medical records, refute plaintiff's deliberate indifference allegations.

First, plaintiff alleges that he was not allowed to wear his arm sling at the jail outside his cell and while in court between January and April 2002 (2d Amd. Compl. 16-17, 20-21). Plaintiff's medical records show that he had a cast and a brace, and he was given a sling as well when released from the hospital; the doctor noted, however, that he did not need to wear

the sling at all times, and there is no doctor order or other evidence that plaintiff was

medically required to wear the sling all of the time (Hilario Ex. D at L24-26, 29, 62, 65, 89-

90, 02, 97-98, 101, 104, 112, 136; Ex. F at K026).  Even if the sling was prohibited on

occasion between January and April 2002, as he alleges, this was not contrary to his medical

needs, let alone deliberately indifferent to such needs.

Second, plaintiff alleges that he did not receive pain medication or any medical

attention for swelling and pain in his arm in February and March 2002 (2d Amd. Compl. 16-

18, 20-21).  Plaintiff's medical records refute this allegation.  He received ample medical care

for swelling and pain in his arm in February and March 2002: he was seen by doctors or

nurses on seven occasions times during those two months, he was prescribed pain medication,

which he refused two times, he was taken to a private orthopedist, he received x-rays, and he

received an arm brace (Hilario Decl. Ex. D at L10, 23, 34-35, 94-96, 216).  Indeed, an expert

in orthopedic surgery described the care plaintiff received for his arm during this time and

previously as "exceptional" (Sampson Decl. ¶ 31).

Lastly, plaintiff alleges that he did not receive medical care for injuries he sustained

on June 26, 2002, in the courtroom and the court holding cell (2d Amd. Compl. 26-28, 30-31).

As discussed above, his medical records show that did in fact receive medical attention on

those occasions (Hilario Decl. Ex. D at L53, L86).  There is no evidence that the medical

attention plaintiff received was in any way inadequate for, let alone deliberately indifferent to,

his medical needs.  Consequently, the evidence submitted by defendants shows no genuine

issue of material fact as to whether plaintiff's constitutional rights were violated based on

insufficient medical care, precluding the County's liability on such claims.

Plaintiff also claims that the County is liable for the Sheriff's deputies and other

county officials' alleged use of excessive force against him on June 26, 2002.  "Unnecessary

and wanton infliction of pain" on a convicted prisoner constitutes cruel and unusual

punishment forbidden by the Eighth Amendment.  *Whitley v. Albers*, 475 U.S. 312, 319

(1986).  As discussed above, plaintiff has presented no evidence that any force was used

against him on June 26, 2002.  While plaintiff's medical records from that day could conceivably infer indicate that somebody used force was against him, there is no evidence to tie such force to any Sheriff deputy or other County official.  Moreover, even if there were evidence that a County official used force against him that day and that the force amounted to a wanton infliction of pain, there is no evidence suggesting that the use of force was the result of a policy or practice by the County.  Consequently, the evidence presented creates no genuine factual issue as to whether the County is liable on plaintiff's claims of excessive force.

In light of these conclusions, the County's alternate arguments for summary judgment need not be reached.

### 3.    Dr. Klein

Plaintiff claims that Dr. Klein was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment, and that he was professionally negligent.  Specifically, he alleges that Dr. Klein failed to perform necessary surgery when plaintiff was initially admitted to Santa Rosa Memorial Hospital with a gunshot wound, and that Dr. Klein later removed the case on plaintiff's arm prematurely (2d Amend. Compl. 12-13).

Dr. Klein has presented evidence in support of his motion showing that he initially examined plaintiff when he was admitted to the Santa Rosa Memorial Hospital on September 15, 2001 (Sanford Decl. Ex. B).  X-rays showed him that plaintiff's arm was broken and had a bullet and other gunshot debris (*ibid.*).  After consulting with two orthopedic trauma doctors and obtaining their opinions for plaintiff's treatment plan, as well as reviewing plaintiff's history and symptoms, Dr. Klein decided not to surgically insert a metal plate because this would increase the risk of infection while also leading to a bad outcome (*ibid.*).  Instead, he decided to proceed with a closed reduction plus protective splinting, with the option for surgery if healing did not occur quickly enough (*ibid.*).  He performed the procedure on September 19, 2001 (*id.* Ex. C).  Following the procedure, he reviewed more x-rays and decided that the bone alignment called for a coaptation splint (*ibid.*).  Coaptation splints and a

9

long arm posterior splint were provided (*ibid.*).

Plaintiff was discharged from the hospital the next day, and returned for a follow-up appointment on October 9 (*id.* Exs. D, E).  On October 9, Dr. Klein reviewed more x-rays, and recommended pain medication and a "well-padded long-arm hanging cast," which were provided to him (*id.* Exs. E, F).  He examined plaintiff again on November 20, recommending a Sarmiento brace, which was provided the next day, and instructed plaintiff to comply with the brace instructions regarding positioning (*id.* Ex. F).  He advised against surgery to insert a metal plate due to the risk of infection and a poor outcome, and he noted that the bullet could be removed after the bone healed (*ibid.*).  At a third follow-up appointment on December 21, more x-rays showed that progress had been made, and Dr. Klein recommended continued use of the Sarmiento brace, proper positioning, a follow-up appointment in approximately one month, and pain medication (*id.* Ex. G).  At the next follow-up appointment with Dr. Klein on January 24, 2002, more x-rays showed "good progress" in the healing of the bone, and Dr. Klein recommended continued use of the Sarmiento brace and occasional use of a sling, analgesics, limited use of the arm, and a follow-up appointment in two months (*id.* Ex. I).  He estimated nine to ten months and "possibly longer" for the bone to heal, at which time the bullet could be removed from the arm (*ibid.*).  On March 28, 2002, plaintiff was seen for the last time by Dr. Klein, and x-rays were taken and the cast removed (*id.* Ex. J).  Dr. Klein found that the fracture remained but was in good alignment, and he recommended continued use of the Sarmiento brace, a new cushion sleeve, stopping narcotic analgesics, and a follow-up in two months (*ibid.*).  He stated that if the fracture remains after 12+ months, surgery for installing a metal plate should be performed (*ibid.*).  Plaintiff's appointment for June 11 was rescheduled because the regular doctor was in surgery, but plaintiff was transferred to San Quentin State Prison before that occurred (*id.* Exs. J, K).  Plaintiff alleges that sometime after his transfer, surgery was performed and a plate installed, but there is no evidence of this or any indication when the surgery was performed.

Dr. Klein also submits the declaration of an orthopedic surgery, Dr. Sampson, opining

1    based upon his training and experience that Dr. Klein's treatment decisions, including to

2    perform a non-surgical "closed reduction" and to remove the cast and replace it with a

3    Sarmiento brace in January, were medically appropriate and "met or exceeded" the standard

4    of care, and that he "provided exceptional care" to plaintiff (Sampson Decl. ¶¶ 25-31).

5            While plaintiff's broken arm certainly qualifies as a "serious" medical need, the

6    evidence establishes that Dr. Klein was neither deliberately indifferent to those needs nor

7    negligent in caring for them.  He performed a closed reduction, considered and explained his

8    decision not to perform surgery, ordered and provided numerous follow-up appointments at

9    which he ordered and reviewed x-rays, provided a cast, a brace and a sling, recommended

10   pain medication, and continuously monitored the progress of the injury.  These decisions,

11   including not to operate and to remove the cast in March 2002, were found by Dr. Klein, the

12   two orthopedic surgeons he consulted, and an additional expert in orthopedic surgery, Dr.

13   Sampson, to be not only medically appropriate but to constitute exceptional care.  Based upon

14   this evidence, the only reasonable conclusion is that the length of time it took to heal was not

15   attributable to Dr. Klein's actions but simply to the severity of the injury itself.  Plaintiff has

16   presented no evidence creating a genuine factual dispute as to whether Dr. Klein was either

17   deliberately indifferent or negligent in caring for plaintiff, nor is such a dispute apparent from

18   defendants' evidence.

19           In light of this conclusion, Dr. Klein's alternative arguments for summary judgment

20   are not reached.  Accordingly, Dr. Klein is entitled to summary judgment on plaintiff's

21   claims.

22           4.      Unserved Defendants

23           Defendants Dr. Hittenberger, Santa Rosa Memorial Hospital and CFMG were not

24   served and therefore have not participated in the motions for summary judgment filed by the

25   other defendants.  They are similarly situated to the other defendants insofar as they, like the

26   other defendants, are alleged to have been responsible for failing to provide plaintiff adequate

27   medical care.  Like the other defendants, there is no evidence that plaintiff did not receive

28                                                   11

1    adequate medical care either for his broken arm or for any injuries he suffered at the

2    courthouse on June 26, 2002.  Accordingly, summary judgment will be granted in their favor.

3    *See Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery*, 44 F.3d 800, 803 (9th Cir. 1995)

4    (affirming district court's granting summary judgment in favor of non-appearing defendant,

5    where plaintiff, in response to motion filed by defendant who had appeared, had "full and fair

6    opportunity to brief and present evidence" on dispositive issue as to claim against non-

7    appearing defendant).

8                                             **CONCLUSION**

9          The motions for summary judgment filed by defendants County of Sonoma, Olney,

10   Gaeslin and Klein (dkt. 124, 134, 135) are **GRANTED**.  Summary judgment is also **GRANTED**

11   in favor of defendants Santa Rosa Memorial Hospital, Drew Hittenberger, M.D., and the

12   California Forensic Medical Group, Inc..

13         The clerk shall enter judgment in favor of defendants and close the file.

14         **IT IS SO ORDERED.**

15   Dated: May ___20___, 2013.

16                                             WILLIAM ALSUP
                                              UNITED STATES DISTRICT JUDGE
17

18

19
     G:\PRO-SE\WHA\CR.04\WELCH158.MSJ2.wpd
20

21

22

23

24

25

26

27

28                                              12